FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JUL 13 PM 2: 07

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RHONDA LAPEYROUSE SCOTT | CIVIL ACTION |
| VERSUS | NO. 00-1681 |
| AMERICAN UNITED LIFE INS. CO. | SECTION "K"(4) |

### ORDER AND REASONS

Before the Court are a Motion for Summary Judgment filed by American United Life Insurance Company ("AUL's") (Doc. 9); a Motion for Summary Judgment filed by Operators and Consultants Services, Inc. (Doc. 12) which in essence adopts the legal arguments present in AUL's motion; and a Cross-Motion for Summary Judgment filed by Rhonda Scott (Doc. 21). This case concerns whether Robert J. Lapeyrouse ("Lapeyrouse") was covered under a group life insurance policy issued by AUL under a group policy issued to OCS at the time of his death. Having reviewed the pleadings, memoranda, exhibits and the relevant law, the Court finds that AUL's and OCS's motions to have merit for the reasons that follow.

DATE OF ENTRY
JUL 1 3 2001

**Standard for Motion for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Stults v. Conoco, 76 F.3d 651, 656, (5th Cir. 1996), (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912-13 (5th Cir. 1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986) (emphasis supplied); Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). Finally, the court notes that the substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The court now turns to the merits of the arguments with these standards in mind.

## Background

OCS hired Layperouse on April 13, 1999. (AUL's Exhibit 1A). At that time, he elected to participate in the "Life Insurance and Accidental Death Plan" offered by OCS and named his daughter Ronda Scott as his beneficiary. (AUL's Exhibit 1B). The relevant form, apparently completed by Layperouse, clearly states that the original effective date of the insurance is May 1, 1999. That date date was apparently entered by another person. Layperouse began work on April 15, 1999, and was written up for poor performance. That hitch apparently ended on April 21, 1999. A paycheck was issued by OCS on April 23, 1999 in which moneys were withheld for payment of insurance premiums. On April 28, 2001, Layperouse allegedly failed to show up for his second hitch because of car trouble. His supervisor testified under oath that Layperouse was instructed to come to the office once his car trouble was resolved. His supervisor testified that upon Layperouse's meeting with him, the supervisor informed him that he was fired. Thus, OCS argues that Layperouse was terminated on April 28, 1999, which plaintiff denies. Another paycheck issued on May 7, 1999 in which moneys were again withheld for payment of insurance premiums. Layperouse died on May 7, 1999. With this background, the Court will first address whether the plaintiff has presented sufficient evidence to rebut defendants' that Mr. Layperouse had been terminated on April 28, 1999.

## There is No Material Question of Fact as to Whether Layperouse was Employed on May 7, 1999.

OCS contends that Layperouse was terminated from OCS on April 28, 1999; however, plaintiff vehemently contests this assertion. Plaintiff has presented two affidavits attesting to declarations made by Layperouse to the affiants indicating that he was still employed by OCS on

April 29, 1999 and May 6, 1999. (See Layperouse affidavit and Scott affidavit attached to Memorandum in Opposition to Summary Judgment). However, such testimony is inadmissible hearsay under Fed. R. Evid. 804.

The only admissible "evidence" that Layperouse was still employed that was offered is totally circumstantial and without a proper foundation. The proof adduced are the responses by OCS to Requests to Production of Documents 8 and 9 which were requests for a "certified copy of any and all notices of separation/termination given to Robert J. Lapeyrouse" and a "certified copy of a notice of separation of Robert J. Lapeyrouse filed and/or submitted to the Louisiana Department of Labor." OCS did not have either. However, plaintiff did not present to the Court by way of deposition testimony or answer to discovery requests that OCS in its normal course of actions prepares such notices of termination, nor has the Court been made aware of a presumption that it must recognize that because the law requires such materials to be prepared, the Court must assume that OCS does so. Without that proof of presumption, the absence of these documents is purely speculative evidence. Likewise, simply because deductions were made from Layperouse's paychecks for insurance does not prove that the insurance had become effective. The language of the policy must control in that regard.

Plaintiff submitted the sworn testimony of Hutchins, Layperouse's supervisor, who attested under oath, that the status sheet indicating Layperouse was fired was prepared by Hutchins contemporaneously with Hutchins meeting Layperouse personally and then inputted at some point into the computer. That report states that it was "submitted" on April 28, 1999 at 3:09:22 and shows that Layperouse was terminated involuntarily and for cause effective April 28, 1999 (AUL's Exhibit 1C to its Motion for Summary Judgment). The circumstantial evidence is only remotely probative

and too attenuated to rebut this testimony. "'Summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a summary judgment in favor of the nonmovant.'" Tanner v. Academy Tankers, Inc., 898 F. Supp. 421, 426 (E.D.Tex. 1995) citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994 (en banc). Thus, the Court finds that plaintiff has not met his burden of proof that Layperouse was an employee of OCS at the time of his death. As such, a review of the policy language demonstrates unequivocally that there was no coverage provided for Layperouse at the time of his death.

### Policy Language

The policy in question has no waiting period for coverage to attach; however, the policy does not become "effective" upon being hired. A parsing of the relevant policy language provides the following:

**SECTION 3 - ELIGIBILITY**

**DEFINITIONS**

**EMPLOYEE** means an individual:

1. whose employment with the Group Policy holder constitutes his principal occupation; and
2. who regularly works at that occupation at the Group Policyholder's regular place of business a minimum of 30 hours per week; and
3. who is not temporarily or seasonally employed.

5

...

> On the effective date of the policy [May 1, 1999][1], an Employee becomes eligible for Personal Insurance if:
>
> 1.     the Employee . . .[2] is Actively at Work; or
> 2.     the Employee. . . is not Actively at Work due to being on an Employer-approved leave of absence other than for injury or sickness; or
> 3.     the Employee . . . is not Actively at Work due to being on Temporary Lay-off.

(AUL Policy attached as Deposition Exhibit 4 to Cross-Motion).

The term "Actively at Work" is defined at Section 2 as follows:

> mean[s] the use of time and energy in the services of the Group Policy holder at the regular place of business by a Person who is physically and mentally capable of performing each of the material and substantial duties of his regular job at least the minimum number of hours listed in the Eligibility of this policy. This includes time off for vacation, jury duty and funeral leave, where the Person otherwise could have been Actively at Work. This does not include time off as a result of an injury, Accidental Bodily Injury, Sickness, strike or lock-out.

(AUL Policy attached as Deposition Exhibit 4 to Cross-Motion).

### Insurance Policy Interpretation

An insurance contract constitutes the law between the parties and must be interpreted using the general rules of contract interpretation as set forth in the Civil Code. Louisiana Ins. Guar. Assoc. v. Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994); In re Combustion, Inc., 960 F. Supp. 1076, 1079 (W.D. La. 1997) citing Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La. 1988); Crabtree v. State Farm Ins., 632 So. 2d 735 (La. 1994). When no factual disputes exist, coverage is an issue of law to be decided by the trial court. United Services Automobile Assoc. v. Dunn, 598 So.2d 1169 (La. App. 1st Cir. 1992); Scherer v. Chaisson, 469 So. 2d 510, 513 (La. App. 3rd Cir. 1985).

---

[1] Plaintiff's Exhibit 1, in globo, at 14th page Plan Enrollment Form.

[2] The Court has removed the following language as it is irrelevant because there is no "waiting period" under the terms of the policy: "has fulfilled the Waiting Period, if any, and". This language is surplusage considering there is no waiting period.

6

The Louisiana Supreme Court set forth a "comprehensive review of the rule for interpretation of insurance contracts" in the <u>Louisiana Ins. Guar. Assoc.</u> case noted above. 15 <u>Civil law Treatise, Insurance law and Practice</u> § 4, p. 6 n.10. (1996). In relevant part, the supreme court stated:

> The judicial responsibility interpreting insurance contracts is to determine the parties' common intent....
> 
> The parties' intent as reflected by the words in the policy determine the extent of coverage.... Such intent is to be determined in accordance with the general ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning....
> 
> An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.... Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume....
> 
> Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions....
> 
> If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or as originating in the insurance context, in favor of the insured. This rule of strict construction requires that ambiguous policy provisions be construed against the insurer who issued the policy and in favor of coverage to the insured.... Under this rule, "equivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured had no voice in the preparation. <u>Garcia v. St. Bernard Parish School Bd.</u>, 576 So. 2d 975, 976 (La. 1991)....
> 
> "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." <u>Breland v. Schiling</u>, 550 So.2d 609, 620-11 (La. 1989). The court should construe the policy "to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." <u>Trinity Industries</u>, 916 F.2d at 269....
> 
> Yet if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. LSA-C.C. Art. 2046.... When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation....

Louisiana Ins. Guar. Assoc., 630 So. 2d at 763-764 (citations omitted in part); see Peterson v. Schimek, 98-1712 (La. 3/2/99), 1999 WL 105333 and Texas Eastern Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741-42 (5th Cir. 1998).

The policy language note above is unambiguous. In order for there to be coverage, Mr. Layperouse had to be an employee of OCS on the effective date of the policy, May 1, 1999. He was not. As such, all of the other claims for continuation of coverage and the like made by plaintiff have no vigor. All of the contentions of plaintiff are contingent upon his being an employee on the effective date of the policy. If he was not an employee on May 1, 1999, then he was never covered and not eligible for insurance under the clear and unambiguous terms of Section 3 of the policy. Mr. Layperouse was not insured because he was not employed. Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed by American United Life Insurance Company ("AUL's") (Doc. 9) and the Motion for Summary Judgment filed by Operators and Consultants Services, Inc. (Doc. 12) are **GRANTED**, and plaintiff's Cross-Motion for Summary (Doc. 21) is **DENIED**.

New Orleans, Louisiana, this 13th day of July, 2001.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE